# United States Court of Appeals
## For the First Circuit

No. 12-1942

R. SUSAN WOODS,

Plaintiff, Appellant,

v.

WELLS FARGO BANK, N.A. AS TRUSTEE FOR FREMONT
INVESTMENT & LOAN SABR 2005-FR2, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2005-FR2,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Torruella, Dyk[*] and Kayatta,
Circuit Judges.

Glenn F. Russell, Jr., with whom Law Office of Glenn F. Russell, Jr., was on brief for appellant.
Christopher A. Cornetta, with whom Houser & Allison, APC, was on brief for appellee.

October 9, 2013

---

[*] Of the Federal Circuit, sitting by designation.

**TORRUELLA, <u>Circuit Judge</u>.** There is, by now, a significant body of commentary on the housing market's most recent boom and bust. Little could we add about the development, proliferation, and ultimate collapse of the mortgage-backed securities market that has not already been said. Writing against that background, we recite here only the most relevant aspects of the market's recent instability. At its height, the boom was facilitated by a novel system of bundling residential mortgages and trading these pooled mortgages in the form of debt-backed security instruments. Crucial to the success of this market was Mortgage Electronic Recording System ("MERS"), a corporate entity that facilitated the pooling and assignment of mortgages among its member institutions.[1]

With the market's bust, as more and more homeowners faced foreclosures initiated not by their original lenders but by financial institutions with which they had never directly dealt, MERS's practices came under increasing legal scrutiny. This case is a paradigmatic example of that common fact pattern. In 2012, R.

---

[1] We have previously described the MERS business model in detail. <u>See</u> <u>Culhane</u> v. <u>Aurora Loan Servs. of Neb.</u>, 708 F.3d 282, 286-88 (1st Cir. 2013). In short, MERS functions to streamline the process of securitization and trading of mortgages. A MERS member, upon becoming a lender, names MERS as its nominee and the mortgagee of record and inputs the mortgage into the MERS database. The mortgage note can then be assigned freely among MERS members, with MERS -- as mortgagee of record -- authorizing and memorializing these trades while circumventing much of the time and paperwork associated with traditional assignments. Only when a note is transferred to a non-MERS member institution does MERS transfer away its interest as mortgagee, thus ending its involvement in the assignment process.

Susan Woods ("Woods"), having fallen behind on her payments, faced foreclosure on her home mortgage. The notice of foreclosure did not come from Woods's lending institution, however, but from an unknown bank that had purchased her mortgage through a series of MERS-facilitated assignments.

Woods challenged the foreclosure on multiple grounds, all largely predicated on her theory that MERS could not validly assign her mortgage, and therefore the receiving institution had no legal interest upon which to foreclose. Woods also brought related state law claims for fraud and unfair business practices. The district court found these claims unavailing and dismissed Woods's complaint. Agreeing that the complaint states no plausible claim for relief, we affirm.

## I. Background

On January 26, 2005, Woods executed a promissory note for $228,000 to Fremont Investment & Loan ("Fremont"), secured by a mortgage on her Hadley, Massachusetts home. The mortgage listed Fremont as the "lender" and MERS as Fremont's "nominee" as well as the "mortgagee" of record. As mortgagee, MERS held legal title over the mortgaged property and, "solely as nominee for [Fremont and its] successors and assigns," it possessed the power of sale. The mortgage was recorded in the Hampshire County Registry of Deeds.

The first of several assignments of Woods's mortgage occurred on October 29, 2007 when, acting in its own name, MERS transferred the mortgage and note to Wells Fargo Bank, National Association as Trustee for Fremont Investment & Loan SABR 2005-FR2. On January 22, 2009, acting this time as nominee for Fremont, MERS again assigned the mortgage and note to Wells Fargo Bank, National Association as Trustee for Fremont Investment & Loan SABR 2005-FR2. Both assignments were timely recorded in the Hampshire County Registry of Deeds.

On April 17, 2009, counsel for Wells Fargo Bank, National Association as Trustee for Fremont Investment and Loan SABR 2005-FR2 filed notice of its intended foreclosure in Massachusetts Land Court, seeking a declaration that the sale was not barred by the Servicemembers Civil Relief Act, 50 U.S.C. app. § 533. Shortly thereafter, on July 23, 2009, the mortgage was again assigned. This time, Wells Fargo Bank, National Association as Trustee for Fremont Investment and Loan SABR 2005-FR2 transferred all "right, title, and interest . . . as current holder of the [] Mortgage" to Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC 2005-FR2 Mortgage Pass-Through Certificates, Series 2005-FR2 ("Wells Fargo").[2]

---

[2] At oral argument, Wells Fargo's counsel explained that this third transfer served only to "adjust[] the name of the trust," with the mortgage remaining in Wells Fargo's possession throughout.

-4-

The Massachusetts Land Court granted Wells Fargo permission to sell on June 16, 2010. Subsequently, on July 5, 2011, Wells Fargo notified Woods of its intent to foreclose. At first proceeding pro se, Woods filed a complaint in Hampshire County Superior Court on July 29, 2011, seeking -- and ultimately receiving -- a preliminary injunction to arrest the foreclosure. After retaining counsel, an amended complaint followed on August 4, 2011.

This amended complaint alleged that Wells Fargo lacked valid possession of her mortgage and had provided no evidence that it held the accompanying note, making any attempted foreclosure illegal. Further, Woods claimed that the foreclosure violated a consent agreement between the State of Massachusetts and Fremont, which required Fremont to notify the state of any pending foreclosures and abide by a thirty-day waiting period during which the Attorney General could arrest foreclosures deemed presumptively unfair. The complaint also included claims for common law fraud and violations of Massachusetts's consumer protection statute.

After removing the case to federal court, Wells Fargo filed a motion to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The motion argued that Woods pled no facts plausibly showing that Wells Fargo lacked legal standing to foreclose, failed to comply with the Fremont consent agreement, or made false representations actionable as fraud. It also argued

-5-

that Woods lacked standing to challenge the assignments of her mortgage, to which she was not a party, and that her claim for deceptive business practices was void for failure to abide by a pre-suit notice requirement.[3] The district court granted that motion on July 3, 2012, concluding that Wells Fargo validly possessed both the note and mortgage, that Woods did not have standing to challenge the mortgage's assignment, and that all requirements of the Fremont consent decree were properly met.

Woods filed a timely appeal from that decision. Although her arguments are not always clear, we read her brief as contending that the following claims were plausibly pled:(1) Woods had standing to challenge the assignments of her mortgage; (2) the purported assignments were void, making Wells Fargo's attempted foreclosure illegal under Mass. Gen. Laws ch. 244, § 14; (3) Wells Fargo did not possess both the note and mortgage at the time of attempted foreclosure; (4) the attempted foreclosure violated the terms of Fremont's consent agreement; and (5) Wells Fargo committed

---

[3] Wells Fargo also pointed to the structure of Woods's complaint, which pled "injunctive relief" as a "cause of action." Properly noting that injunctive relief is not a stand-alone cause of action in Massachusetts, see Payton v. Wells Fargo Bank, N.A., Civ. No. 12-11540-DJC, 2013 WL 782601, at *6 (D. Mass. Feb. 28, 2013) (collecting cases), Wells Fargo asserted that this error was fatal to all claims appearing thereunder. While acknowledging Woods's mistake, we disagree as to its effect. It is sufficiently clear from the complaint that Woods's claims were intended to proceed under Mass. Gen. Laws ch. 183, § 21 and id. ch. 244, § 14. We will review them as such.

fraud and deceptive business practices under Mass. Gen. Laws ch. 93A.

## II. Discussion

We review a dismissal for failure to state a claim under Rule 12(b)(6) de novo. Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 532 (1st Cir. 2011). Setting aside any statements that are merely conclusory, we construe all factual allegations in the light most favorable to the non-moving party to determine if there exists a plausible claim upon which relief may be granted. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

### 1. Woods's standing to challenge assignments

Before turning to the merits of Woods's challenge to the assignment of her mortgage, we must take up the predicate question of whether she has standing to bring that claim. The district court found that she did not, reasoning that Woods was "not a party to the trust agreement, nor . . . in privity with Fremont." Woods v. Wells Fargo Bank, N.A., 875 F. Supp. 2d 85, 88 (D. Mass. 2012). In a case decided subsequent to the district court's order, however, this court rejected that approach, holding that standing may be appropriate even where a mortgagor is not party to, nor beneficiary of, the challenged assignments. Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 290 (1st Cir. 2013) (assessing mortgagor's standing based solely on privity "paint[s] with too broad a brush"). Because Massachusetts law allows for non-judicial

-7-

foreclosures by mortgagees with the power of sale, <u>Culhane</u> reasoned that barring standing in all cases would unduly insulate assignments; mortgagors could not challenge the validity of assignments either as the defendant in a suit for judicial authorization or as the petitioner in a suit like the present one. <u>Id.</u> (holding that mortgagors must have standing to bring certain challenges to assignments in order to protect their "legally cognizable right" to be secure from unlawful foreclosures). On this basis, <u>Culhane</u> found standing appropriate in instances where a mortgagor "challenge[s] a mortgage assignment as invalid, ineffective, or void," although not where the challenge would "render [the assignment] merely voidable . . . but otherwise effective to pass legal title." <u>Id.</u> at 291.

Thus, claims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing. <u>Id.</u> In contrast, standing exists for challenges that contend that the assigning party never possessed legal title and, as a result, no valid transferable interest ever exchanged hands. <u>See</u> <u>U.S. Bank Nat'l Ass'n</u> v. <u>Ibanez</u>, 458 Mass. 637, 651, 941 N.E.2d 40, 53 (2011) ("[T]here must be proof that the assignment was made by a party that itself held the mortgage."). In this latter case, the challenge is to the "foreclosing entity's status qua mortgagee." <u>Culhane</u>, 708 F.3d at 291; <u>see also</u> <u>Ibanez</u>, 941

-8-

N.E.2d at 50 ("Any effort to foreclose by a party lacking jurisdiction and authority to carry out a foreclosure . . . is void.") (internal quotation marks omitted).

While far from a paradigm of clarity, Woods's complaint appears to set forth just such a challenge. The complaint alleges that MERS, as a mere "nominee" for Fremont, never possessed a legally transferable interest in Woods's mortgage, rendering any attempted assignments void. See Culhane, 708 F.3d at 291 ("[The challenge] is premised on the notion that MERS never properly held the mortgage and, thus, had no interest to assign. If this were so, the assignment would be void . . . .").[4] Therefore, under the framework of Culhane, Woods has standing to challenge whether the assignments of her mortgage were legally valid.

Having determined that Woods may bring a challenge as to the assignments' validity, we now turn to the merits of that claim.

**2. The assignments' validity**

Woods contends that the very premise upon which MERS is predicated -- that it may remain a mortgagee of record throughout multiple transfers of an underlying promissory note -- runs "counter to the title theory [] nature" of Massachusetts law. In

---

[4] Insofar as Woods's amended complaint also suggests that the assignments were in violation of the trust's Pooling and Servicing Agreement, we find that no standing exists as to these alternate claims, which would render the assignment only voidable. See, e.g., Koufos v. U.S. Bank, N.A., 415 B.R. 8, 22 (Bankr. D. Mass. 2009). Given that Woods seems to have forgone this argument in her appellate brief, we presume that such a deficiency is clear.

support of this proposition, her complaint recites Massachusetts law holding that when a mortgage is split from its promissory note a constructive trust is implied to the benefit of the noteholder. As such, she asserts that Fremont, as the original lender and noteholder, was the sole entity possessing a beneficial, transferable interest in her mortgage. MERS, in contrast, held only a bare legal interest as a "placeholder nominee," rendering it unable to properly initiate an assignment.

This argument stumbles while barely out of the gate. As an initial matter, Woods's contention that the MERS business model runs counter to the nature of Massachusetts mortgage law has been resoundingly rejected by this court. Culhane, 708 F.3d at 291-93 (finding that the MERS model "fit[s] comfortably within the structure of Massachusetts mortgage law"); see also Rosa v. Mortg. Elec. Sys., Inc., 821 F. Supp. 2d 423, 429 (D. Mass. 2011); In re Marron, 462 B.R. 364, 374 (Bankr. D. Mass. 2012). Further, it ignores the express language of Woods's mortgage, which grants MERS, as nominee, the "power of sale." "Under Massachusetts law, a nominee in such a situation holds title for the owner of the beneficial interest." Culhane, 708 F.3d at 293 (citing Morrison v. Lennett, 415 Mass. 857, 860-61, 616 N.E.2d 92, 94-95 (1993)). As such, when Fremont -- the holder of the beneficial interest -- undertook to transfer the promissory note to Wells Fargo, MERS was

"authorized by the terms of the contract" to transfer the underlying mortgage as well.  Id.

Woods's recitation of traditional mortgage law precepts regarding the effect of splitting a note from its underlying mortgage are no more helpful to her cause.  It is undoubtedly true, as Woods asserts, that in Massachusetts an entity that holds a mortgage but not the associated promissory note holds that mortgage in an equitable trust for the benefit of the noteholder. Ibanez, 941 N.E.2d at 53-54 (citing Barnes v. Boardman, 149 Mass. 106, 114, 21 N.E. 308, 309 (1889)).  Yet Culhane made clear that MERS's status as an equitable trustee does not circumscribe the transferability of its legal interest.  Culhane, 708 F.3d at 292 (explaining that where the note and mortgage are split, the mortgagee retains and may transfer its bare legal interest in the underlying mortgage). As such, it is clear, and Woods presents no plausible claim to the contrary, that MERS, as the mortgagee of record, possessed the ability to assign Woods's mortgage. Id. ("[A] mortgagee may assign its mortgage to another party."); McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 215 (1st Cir. 2012).

Woods attempts to set forth an alternative argument that Wells Fargo's interest is legally invalid because the recorded assignments through which it purportedly gained possession failed to account for additional parties with an interest in the mortgage. The entirety of this argument rests on a single allegation in

-11-

Woods's complaint: "Barclays Bank, PLC is the 'investor' of [Woods's] loan, not [Wells Fargo]."[5] Even drawing all reasonable inferences from this factual allegation, however, it falls short of establishing any plausible claim upon which relief might be granted.

Woods fails to recognize that the MERS registry electronically tracks transfers of a mortgagors' promissory note, a process which is legally distinct from the assignment and recordation of mortgage interests in a county registry of deeds. See Rosa, 821 F. Supp. 2d at 429 ("MERS is named as the mortgagee of record . . . so that beneficial ownership and servicing rights of the note may be transferred among MERS members without the need to publicly record such assignments; instead assignments of the note are tracked by MERS' electronic system."). That Barclays possessed some interest in the promissory note at some time -- the registry search is undated -- does not plausibly establish a legal deficiency in the transfer of that note's underlying mortgage. There is a chain of recorded assignments which show the mortgage traveling from Fremont to Wells Fargo, and Woods has offered no

_____

[5] In support of this allegation, Woods appends a printout of a MERS registry search listing Barclays Bank, PLC as an "investor." This printout is undated and identifies the underlying mortgage only by its MERS MIN number. MERS never clearly defines the meaning of "investor" in its governing rules. The term is used in those rules, however, in a manner apparently synonymous with "beneficial owner." See In re Marron, 455 B.R. 1, 8 n.8 (Bankr. D. Mass. 2011).

grounds on which to call the validity or completeness of those assignments into question. Ibanez, 941 N.E.2d at 53 ("A foreclosing entity may provide a complete chain of assignments linking it to the record holder [to prove it validly holds the mortgage].").

### 3. Wells Fargo's ability to foreclose

Having found the transfer of Woods's mortgage valid, we need pause only briefly to make clear that there exists no real dispute that Wells Fargo is the current possessor of Woods's promissory note. Woods does not allege that Wells Fargo does not own the note. She instead alleges only that "[a]t no time has [Wells Fargo] ever adduced any direct evidence that it received a valid assignment of [her] Note." In support of its motion to dismiss, Wells Fargo presented what appears to be the note, endorsed in blank, at oral argument before the district court and as an appendix to its motion to dismiss.

In response, Woods provides no serious challenge to either the note's authenticity or Wells Fargo's ownership of it. At oral argument Woods offered only a hypothetical allegation, absent any factual support, that the note might be forgery. Even that weak argument was largely foregone in her appellate brief. Like the district court before us, we see no need to travel down

this rabbit hole of baseless suspicion; it is clear no plausible claim rests at its bottom.[6]

Where the note and mortgage are unified at the time of foreclosure, our inquiry may come to an end. Eaton v. Fed. Nat'l Mortg. Ass'n, 462 Mass. 569, 582-84, 969 N.E.2d 1118, 1129-30 (2012) (requiring possession of both the note and mortgage to properly foreclose).[7] Having found no plausible grounds for relief based on MERS's involvement in the assignment of Woods's mortgage, we affirm the district court's dismissal of her Mass. Gen. Laws ch. 244, § 14 claim and turn now to the other claims asserted in her amended complaint.

### 4. Fremont's consent agreement

Woods next asserts that the foreclosure violated the terms of a consent agreement between Fremont and the Commonwealth of Massachusetts, requiring Fremont to notify the Attorney General prior to initiating any foreclosures in the state. This agreement was the result of litigation filed by the Massachusetts Attorney General against Fremont based on unfair and deceptive business

---

[6] We note also that Woods has stopped paying her mortgage and that no financial institution other than Wells Fargo has sought to take action on account of that breach.

[7] Because Wells Fargo reunified the note and mortgage prior to initiating foreclosure, there is no reason to delve into the ongoing fray of litigation attempting to demarcate the precise borders of Eaton's prospective application. Eaton, 969 N.E.2d at 1133; see also HSBC Bank USA, N.A. v. Norris, 83 Mass. App. Ct. 1115, 983 N.E.2d 749 (2013) (unpublished opinion).

practices, Mass. Gen. Laws ch. 93A, stemming from its mortgage foreclosures in the Commonwealth. Final Judgment by Consent, Commonwealth v. Fremont Inv. & Loan, No. 07-4373-BLS1 (Mass. Supp. Ct. June 9, 2009) (incorporating, verbatim, the terms of an earlier preliminary injunction arresting Fremont's foreclosures absent Attorney General review).[8] As relevant to this appeal, the consent agreement contains language mandating that Fremont receive approval by the Attorney General prior to proceeding with any foreclosure in the Commonwealth:

> Before initiating or advancing a foreclosure on any mortgage loan originated by Fremont . . . Fremont shall first give the Attorney General 30 days advance written notice so that the Attorney General can verify that the proposed foreclosure falls outside the scope of this [agreement]. <u>If the Attorney General has not given written notice of an objection to Fremont by the 30th day</u> . . . <u>Fremont may proceed</u> with the foreclosure.

Id. slip op. at 10 (emphasis added).

Wells Fargo presented to the district court a letter, dated March 10, 2009, informing the Attorney General of its intention to foreclose. Woods contends, however, that absent proof of return correspondence from the Attorney General expressly showing that it consented to the foreclosure, her claim that Wells

---

[8] The requirement that Fremont-originated mortgages be reviewed prior to foreclosure originated in a February 28, 2008 order by the Massachusetts Superior Court. It is this order that was in effect at the time Wells Fargo sought clearance to foreclose on Woods's mortgage. The order was incorporated, in full, into the court's subsequent consent judgment.

Fargo violated the agreement must be allowed to proceed. This argument strays far wide of its mark. The language of the consent decree unambiguously requires return correspondence only if the Attorney General wishes to preclude foreclosure. In contrast, where the Attorney General does not wish to forestall the proceedings, the agreement's terms make clear that silence suffices. As such, we agree with the district court that a response was not required, and Woods cannot craft a colorable claim from its absence.

Moreover, nothing in the consent agreement appears to create a private right of action on which Woods or similarly situated plaintiffs could challenge compliance with its terms. In fact, in its final form the agreement explicitly disclaims the creation of any private right of action. Id. slip op. at 16. Although we need not rest on this issue, having found no facts plausibly suggesting a violation occurred, we note that it is far from clear how any such violation could be enforced by private litigants, regardless.

### 5. Woods's fraud and Chapter 93(a) claims

Woods predicates her claim of fraud on the allegation that Wells Fargo "intentionally made statements . . . that [it] was the 'holder' of her mortgage with entitlement to the rights to her monthly mortgage payments, and the related right to foreclose." Further, she alleges that these statements caused her "direct" and

"pecuniary" injury as a result of the encumbrance placed on her property by Wells Fargo's attempts to enforce the mortgage debt.

Under Massachusetts law, fraud requires that the defendant made a knowingly false statement concerning a material matter that was intended to, and did in fact, induce the plaintiff's reliance and, through that reliance, created an injury. Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458, 772 N.E.2d 1054, 1066 (2002). A claim of fraud must also satisfy the particularity requirements set forth in Fed. R. Civ. P. 9(b), mandating "specifics about the time, place, and content of the alleged false representations." Juárez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 279-80 (1st Cir. 2013) (quoting United States ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 731 (1st Cir. 2007) (internal quotation marks omitted).

Although Woods's complaint includes a basic recitation of the elements of fraud, she does not indicate when, where, and how often the allegedly false statements were made or what, specifically, was stated. She also fails to state the specific nature of the resulting harm, indicating only that it was of a monetary nature. Finally, the complaint is wholly silent on the issue of her actual reliance. This vague pleading falls short of Rule 9(b)'s particularity requirement. Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985) ("[M]ere allegations of fraud, . . . averments to conditions of mind, or referrals to plans and schemes

-17-

are too conclusional to satisfy the particularity requirement. . . ."); see also Juárez, 708 F.3d at 280 (dismissing a claim of fraud based on an allegedly wrongful foreclosure for failure to specifically plead facts showing detrimental reliance).

Woods's claim further fails for lack of scienter. N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009) ("The Courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992) (internal quotation marks omitted)). Our conclusion that Woods failed to plausibly plead that Wells Fargo did not legally possess her mortgage is thus fatal to her fraud claim as well. Without factual allegations sufficient to suggest illegality occurred, we are necessarily left without allegations sufficient to suggest Wells Fargo knew of such illegality. We therefore affirm the dismissal of Woods's claim of fraud.

Woods's claim under Chapter 93A was also properly dismissed. Massachusetts law protects consumers from "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws. ch. 93A, § 2. What constitutes an unfair or deceptive practice requires an individualized, "fact-

specific" inquiry.  <u>Arthur D. Little, Inc.</u>, v. <u>Dooyang Corp.</u>, 147 F.3d 47, 55 (1st Cir. 1998) (internal quotation marks and citation omitted).  Generally, however, the facts must illustrate something beyond a mere good faith dispute, failure to pay, or simple breach of contract.  <u>Id.</u> at 55-56 (citations omitted).  In relation to a foreclosure proceeding, therefore, "[i]t is not enough in the context of Chapter 93A [] to allege that defendants foreclosed . . . in violation of Massachusetts foreclosure law.  Something more is required."  <u>Juárez</u>, 708 F.3d at 281.

Here, Woods's complaint offers no more.  After making a general allegation regarding the purported illegality of Wells Fargo's foreclosure, she states only that she seeks a remedy under 93A. This failure to set forth any particular acts or practices marked by "an extortionate quality . . . of unfairness [and deceptiveness]," <u>Arthur D. Little, Inc.</u>, 147 F.3d at 55 (quoting <u>Atkinson</u> v. <u>Rosenthal</u>, 33 Mass. App. Ct. 219, 226, 598 N.E.2d 666, 670 (1993)), necessitates a finding that the facts as pled are insufficient to state a claim.

Woods's claim necessarily fails for another reason as well.  Namely, 93A includes a pre-suit notice provision mandating that "[a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered" be sent to the respondent.

-19-

Mass. Gen. Laws ch. 93A, § 9(3); Entrialgo v. Twin City Dodge, Inc., 368 Mass. 812, 812, 333 N.E.2d 202, 204 (1975) ("A demand letter listing the specific deceptive practices is a prerequisite to suit. . . ."). Plaintiffs are exempt from this requirement only if "the prospective respondent does not maintain a place of business or does not keep assets within [Massachusetts]." Mass. Gen. Laws ch. 93A, § 9(3). Woods does not dispute that she never sent timely pre-suit notice. Rather, she argues for an exemption from the requirement, based on her assertion that Wells Fargo maintains no assets in Massachusetts. Wells Fargo avers, to the contrary, that it undoubtedly possesses at least one asset: a real property interest in the form of Woods's mortgage and note.

Woods points to a recent district court decision holding that possession of a mortgage, absent its accompanying note, cannot alone sustain 93A's notice requirement because it "is of no value as property, as it could at most be only resorted to as a trust for the benefit of the holder of the note." Butler v. Deutsche Bank Trust Co. Ams., Civ. No. 12-10337-DPW, 2012 WL 3518560, at *12-13 (D. Mass. Aug. 14, 2012) (quoting Eaton, 969 N.E.2d at 1125) (internal quotation marks omitted). Even if that case is correct, however, contra McKenna, 693 F.3d at 218 (finding a real property interest sufficient to require notice even absent a determination that the mortgagee held the note), it is inapposite to the current proceedings.

-20-

Here, the complaint does not support an allegation that Wells Fargo holds a mortgage "separated from the underlying debt." Butler, 2012 WL 3518560 at *12 (quoting Eaton, 969 N.E.2d at 1124) (internal quotation marks omitted). Rather, Wells Fargo holds both the mortgage and the underlying promissory note. In Massachusetts, a title theory state, possession of the mortgage and note undisputedly vests in the holder a real property interest. See Ibanez, 941 N.E.2d at 51-52; Maglione v. BancBoston Mortg. Corp., 29 Mass. App. Ct. 88, 91, 557 N.E.2d 756, 758 (1990) (explaining that in a title theory state "the mortgagee may enter into possession of the mortgaged premises upon default and before foreclosure"). As such, that Wells Fargo maintained at least one asset in Massachusetts is clear. This is enough to establish the need for pre-suit notice. Because Woods's pleadings admit she filed no notice, her 93A claim was properly dismissed.

## III. Conclusion

Ultimately, this case stands as another example of the personal costs exacted on homeowners as a result of the housing market's Icarus-style rise and fall. Its unfortunate events, however, do not present legally cognizable claims for relief in this case. For the reasons set forth above, we affirm the district court's dismissal of Woods's complaint.

**Affirmed.**