Joseph M. CURRAN, Debtor.

Carolyn Privitera, Plaintiff–Appellant,

v.

Joseph M. Curran, Defendant–Appellee.

BAP NO. MW 15–051
Bankruptcy Case No. 14–42811–CJP
Adversary Proceeding No. 15–04024–CJP

United States Bankruptcy Appellate Panel
of the First Circuit.

August 4, 2016

William C. Parks, Esq., on brief for Plaintiff–Appellant.

Joy D. Hotchkiss, Esq., on brief for Defendant–Appellee.

Before Lamoutte, Deasy, and Cary, United States Bankruptcy Appellate Panel Judges.

Deasy, U.S. Bankruptcy Appellate Panel Judge.

This appeal arises from an adversary proceeding in which Carolyn Privitera ("Privitera") sought a determination that a debt owed to her by the debtor, Joseph Curran ("Curran"), was nondischargeable pursuant to § 523(a)(2)(B).[1] Curran filed a motion to dismiss the complaint for failure to state a claim under Rule 12(b)(6) and Bankruptcy Rule 7012. Privitera objected to the motion, and also sought to amend the complaint to add a count under § 523(a)(2)(A). After a hearing, the bankruptcy court denied Privitera's motion to amend, granted the motion to dismiss, and dismissed the complaint. Privitera appealed. For the reasons set forth below, we **AFFIRM.**

## BACKGROUND

### I. Factual Allegations Contained in the Complaint

In November 2007, Privitera made a loan in the amount of $30,000.00 to Curran to support his landscaping business. At the time, Privitera and Curran were in a romantic relationship. In connection with the loan, Privitera's attorney drafted and the parties executed a written document entitled "Loan Agreement and Promissory Note" ("Loan Agreement"), which consisted of a Loan Agreement, a Promissory Note attached as Exhibit 1.2, and a List of Collateral attached as Exhibit 2.1. Curran was not represented by counsel in connection with the loan.

In Article 2 of the Loan Agreement, entitled "Security and Guarantee," the parties agreed Curran would execute and deliver to Privitera a security agreement "covering the property described in Exhibit 2.1 [the List of Collateral], which would be "duly recorded and/or filed." In Article 4, entitled "Negative Covenants," Curran agreed he would not "create, incur, assume, or suffer to exist any indebtedness, mortgage, pledge, security interest, encumbrance, lien, or charge of any kind upon the use of any ... property ..., whether owned at the date hereof or hereafter acquired...." Although Privitera alleged her attorney filed a financing statement after the parties executed the Loan Agreement, Curran did not execute a security agreement or other document granting Privitera a security interest.

In drafting the Loan Agreement, either Privitera or her attorney asked Curran to provide a list of property, which Privitera's attorney then incorporated into the List of Collateral. The list of property was "a list of personal property belonging to Curran, either by title or by physical possession." It included descriptions of the property and the "cost" of each item. The "cost" of each item represented the purchase price Curran paid, not the resale value of the property or any other valuation. The two pieces of equipment with the highest "costs" were two trucks, a Ford F350 and a Ford F250, with "costs" of $29,767.78 and $34,602.50 respectively. The total "cost" of all the other property was $22,137.86.

At the time of the Loan Agreement, one or both trucks were subject to pre-existing

---

**1.** Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101 *et seq.* All references to "Bankruptcy

Rule" shall be to the Federal Rules of Bankruptcy Procedure. All references to "Rule" shall be to the Federal Rules of Civil Procedure.

security interests, and, Privitera alleged, the Ford F250 was "titled to the lender" rather than to Curran.[2] The List of Collateral did not mention the pre-existing security interests in the trucks, or that Curran did not have title to one of the trucks. Privitera alleged Curran was aware of the existing loans on the trucks, but did not tell her. At the time he executed the Loan Agreement, Curran intended to use some of the loan proceeds to "catch up on late payments [on] his loans for the trucks" and "used some of the loan proceeds ... for this purpose." If the full "cost" of the trucks had been available as security, Privitera asserted, the Loan Agreement "would have been fully secured when executed."

Privitera alleged she "relied on Curran's representations, including his offer of property as security on Exhibit 2.1 [the List of Collateral], in making the loan," and she would not have made the loan had she known the trucks were not available as security. She also asserted her brother had recently died, and she had no experience with the business of making loans.

After the parties executed the Loan Agreement, Privitera tendered the principal amount of the loan to Curran, using funds she obtained by using her credit card. Curran subsequently defaulted on his repayment obligations under the Loan Agreement, and Privitera had to repay the credit card debt herself. Privitera sued Curran in state court and, in March 2014, she obtained a default judgment against him in the amount of $137,030.78.

## II. The Bankruptcy Case

Curran filed a chapter 7 petition in December 2014.

Thereafter, Privitera filed a complaint seeking a determination that Curran's debt to her was nondischargeable under § 523(a)(2)(B).[3] In the complaint, Privitera asserted: (1) Curran had made a statement in writing regarding his financial condition, namely, that he "could offer two trucks as security" for the loan; (2) the statement was materially false because it "substantially misrepresented the amount of property that was available to secure" the loan, "failed to disclose pre-existing security interests in one or both trucks" and that "he did not have the title to one of the trucks," and because the "cost" provided for the trucks had "almost no relationship to his amount of equity in them"; (3) she reasonably relied on Curran's misrepresentation because she had no experience

---

**2.** The hearing transcript reflects the parties' confusion about whether Curran "owned" the Ford F250 at the time they executed the Loan Agreement. In Massachusetts, the exclusive method of perfecting a security interest in a motor vehicle is through a notation of the lien on a valid certificate of title. *See City of Boston v. Rockland Trust Co.*, 391 Mass. 48, 460 N.E.2d 1269, 1271 (1984) (citing Mass. Gen. Laws ch. 90D, §§ 21, 22, and 26). Therefore, the "owner" of the vehicle is not always the one holding the title to the vehicle.

**3.** Section 523(a)(2)(B) provides, in pertinent part, as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

...

(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2)(B).

with business loans, had no reason to disbelieve him, had no knowledge of the truck loans, was grieving her brother's death, and was advised by an attorney in the transaction; (4) Curran knew of the pre-existing security interests in the trucks and that one truck was not titled to him, and, therefore, made the statement with the intent to deceive; and (5) she "suffered a detriment due to her reliance, in the loss of the principal amount she loaned to Curran, plus interest, collections costs, and damage to her credit rating." Curran answered the complaint and asserted a counterclaim against Privitera, alleging, among other things, she had filed the complaint in bad faith and she had failed to perfect any alleged security interest she had in his property.[4]

Thereafter, Curran filed a motion to dismiss the complaint ("Motion to Dismiss") for failure to state a claim under Rule 12(b)(6) and Bankruptcy Rule 7012(b), ar-

guing, among other things, the List of Collateral did not constitute a statement regarding his financial condition as required under § 523(a)(2)(B). Privitera opposed the Motion to Dismiss and moved to amend her complaint to add a count under § 523(a)(2)(A) ("Motion to Amend").[5] In his response, Curran argued the complaint failed to meet the required elements under both § 523(a)(2)(A) and § 523(a)(2)(B).

The bankruptcy court held a hearing on the various motions on August 27, 2015. After hearing arguments from the parties, the bankruptcy court ruled as follows:

> The failure of the plaintiff to have [ ] properly perfected a security interest in these vehicles is at the heart of this whole situation. I didn't see it when the complaint was filed. I don't see it now. The [ ] standards for nondischargeability under [§ ] 523(a) include that ... the creditor's reliance was justifiable and

---

**4.** Privitera subsequently moved for a judgment on the pleadings with respect to the counterclaim, arguing it should be dismissed pursuant to the Massachusetts anti–SLAPP statute, Mass. Gen. Laws ch. 231, § 59H. After a hearing, the bankruptcy court granted the motion for judgment on the pleadings, awarded attorney's fees and costs to Privitera, and ordered Privitera to submit an affidavit detailing her attorney's fees and costs. The orders related to the counterclaim are not the subject of this appeal.

**5.** In the First Amended Complaint attached to the Motion to Amend, Privitera asserted the identical facts as those in the original complaint, but she added a second count. In Count II, entitled "False Pretenses, False Representation, or Actual Fraud," Privitera alleged the following: (1) Curran made a "knowing false representation or representation in reckless disregard of the truth to Privitera, namely a representation that he could and would offer trucks as security for a loan from Privitera, while at the same time Curran was aware the trucks were already encumbered by prior security interests"; (2) Curran intended to deceive Privitera because he pre-

pared the list of property himself and failed to reveal the prior security interests or that one truck was not titled to him, he intended to use the loan proceeds to "catch up [on] prior loans," and he was aware her brother had recently died; (3) Curran induced her reliance upon the false statement because he drafted the list of property for use in the Loan Agreement and provided the list "in order to memorialize the property offered as security for the Agreement," and she would not have made the loan had Curran not offered collateral as security; (4) she actually relied on Curran's "false statements" in her assent to the Loan Agreement and she would not have made the loan had "Curran not offered collateral as security"; (5) her reliance was justifiable because she never worked for a bank and had no experience making business loans, she was in a romantic relationship with Curran and had no reason to disbelieve him, she had no knowledge of the prior loans on the trucks, and she was grieving her brother's death; and (6) her reliance on Curran's misrepresentations or omissions caused her damage, "including the loss of the principal amount of the loan, plus interest, collections costs, and damage to her credit rating."

the creditor's reliance here was not justifiable because it was her obligation to do her part of the deal, which was to get a security interest in the first place and without having gotten a security interest it doesn't matter what the misrepresentation was because ... even if he did misrepresent to her the status of the liens on the collateral, so what? She didn't have a lien herself. So how could she have been hurt by the misrepresentation?

So I am going to grant the motion to dismiss the complaint. I'm going to deny the motion to amend the complaint to add the other count because it's futile. I don't think it will survive a motion to dismiss as well because as I pointed out earlier, the [ ] representation in the ... new count is that he failed to reveal the prior security interest. It doesn't say that he told her that ... these assets were unencumbered. And that would ... be the misrepresentation that might give rise [to a claim], but I ... would say that the fact that she didn't do her part and get her encumbrance perfected would be fatal, in any case.

So I don't, I just don't see that this is a [§ ] 523(a) case, ... and I'm going to dismiss it.

After the hearing, the bankruptcy court entered an order denying Privitera's Motion to Amend ("Order Denying Motion to Amend") and an amended order granting Curran's Motion to Dismiss ("Order Granting Motion to Dismiss").[6] This appeal followed.

## JURISDICTION

We have jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court. *See* 28 U.S.C. § 158(a)(1). Generally, an order granting a motion to dismiss an adversary proceeding is a final order. *Gonsalves v. Belice (In re Belice)*, 480 B.R. 199, 203 (1st Cir. BAP 2012) (citation omitted). Although the bankruptcy court indicated dismissal of the adversary proceeding would not occur until after a ruling on Privitera's counsel's fees in connection with dismissal of the counterclaim, that does not prevent the Order Granting Motion to Dismiss from being final. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) ("[A]n unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final."); *House of Flavors, Inc. v. TFG–Michigan, L.P.*, 700 F.3d 33, 36 (1st Cir.2012) ("[A] request for statutory attorneys' fees after a judgment is entered does not render the judgment on the merits non-final or toll the time for filing an appeal from it.").

In addition, although a bankruptcy court's order denying a motion to amend a complaint is usually interlocutory when entered, it becomes final upon the entry of an order dismissing the case. *See Sullivan v. Costa (In re Costa)*, BAP No. MB 12–032, 2013 WL 63916, 2013 Bankr.LEXIS 74 (1st Cir. BAP Jan. 3, 2013) (citation omitted). The bankruptcy court has not yet entered an order dismissing the case. Nonetheless, as the Order Granting Motion to Dismiss is sufficiently final for purposes of this appeal, the Order Denying Motion to Amend is also final.[7] Accord-

---

6. The Order Granting Motion to Dismiss provided, among other things: "Dismissal of this proceeding will occur upon the disposition of plaintiff's counsel's application for compensation [# 22] and supplemental application."

7. On March 4, 2016, Privitera filed a motion with the bankruptcy court in which she stated the court's award of attorney's fees and costs against Curran had been paid in full. The docket, however, does not reflect entry of an order dismissing the case.

ingly, we have jurisdiction to hear this appeal.

## STANDARD OF REVIEW

■ We review a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *See Castellanos Group Law Firm L.L.C. v. F.D.I.C. (In re MJS Las Croabas Prop., Inc.)*, 545 B.R. 401, 417 (1st Cir. BAP 2016). An order dismissing a complaint for failure to state a claim is subject to de novo review. *See Juárez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 276 (1st Cir.2013) (citation omitted); *Banco Santander de P.R. v. López–Stubbe (In re Colonial Mortg. Bankers Corp.)*, 324 F.3d 12, 15 (1st Cir. 2003) (citations omitted). An order denying a motion to amend a complaint is reviewed for an abuse of discretion. *Zullo v. Lombardo (In re Lombardo)*, 755 F.3d 1, 3 (1st Cir.2014) (citations omitted) (internal quotations omitted); *Juárez*, 708 F.3d at 276 (citing *Hatch v. Dep't for Children*, 274 F.3d 12, 19 (1st Cir.2001)). A court's exercise of discretion will be left untouched if " 'the record evinces an arguably adequate basis for the court's decision,' such as futility of the amendment." *Juárez*, 708 F.3d at 276 (quoting *Hatch*, 274 F.3d at 19); *see also In re Lombardo*, 755 F.3d at 3 ("While the rules [ ] reflect a liberal amendment policy, we defer to the bankruptcy court's denial of leave to amend if supported by an apparent, adequate reason . . . .") (citation omitted).

## DISCUSSION

### I. Whether the Bankruptcy Court Erred in Granting the Motion to Dismiss.

#### A. Appropriate Legal Standard

■ As a preliminary matter, although styled as a motion to dismiss under Rule 12(b)(6), Curran filed the motion after an-

swering the complaint and after Privitera responded to his counterclaim. Thus, he should have filed the motion as one for a judgment on the pleadings under Rule 12(c). *See* Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."); *see also Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir.2005) ("[T]he pleadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed . . . ."). In any event, the standard for reviewing a motion for judgment on the pleadings is essentially the same as the standard for reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Pérez–Acevedo v. Rivero–Cubano*, 520 F.3d 26, 29 (1st Cir.2008) (citation omitted); *see also Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008) (citation omitted).

Under Rule 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. In *Ashcroft v. Iqbal*, the Supreme Court explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127 S.Ct. 1955. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [*Id.*] Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line be-

tween possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S.Ct. 1955.

556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When considering a motion brought pursuant to Rule 12(b)(6), the court must treat all well-pleaded allegations in the complaint as true, and must view them in the light most favorable to the plaintiff. *Gray,* 544 F.3d at 324. However, the court need not accept as true conclusory allegations or legal characterizations cast in the form of factual allegations. *Twombly,* 550 U.S. at 555–56, 127 S.Ct. 1955.

Applying this standard to Rule 12(c) motions, the Panel recently stated:

> While a Rule 12(b)(6) motion is "laser-focused on the legal adequacy of the complaint," a motion for judgment on the pleadings under Rule 12(c) examines "the undisputed factual record expanded by the defendant's answer to determine the merits of the claims as revealed in the formal pleadings." *Pimental v. Wells Fargo Bank, N.A.,* C.A. No. 14–494S, 2015 WL 5243325, [at] *4 (D.R.I. Sept. 4, 2015) (citations omitted). "'In the archetypical case, the fate of such a motion will depend upon whether the pleadings, taken as a whole, reveal any potential dispute about one or more of the material facts.'" *Pollard v. Law Office of Mandy L. Spaulding,* 967 F.Supp.2d 470, 474 (D.Mass.2013), aff'd, 766 F.3d 98 (1st Cir.2014) (quoting *Gulf Coast Bank & Trust Co. v. Reder,* 355 F.3d 35, 38 (1st Cir.2004)). Because a Rule 12(c) motion "calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences" in his favor. *R.G. Fin. Corp. v. Vergara-Nuñez,* 446 F.3d 178, 182 (1st Cir.

2006) (citations omitted). "There is no resolution of contested facts in connection with a Rule 12(c) motion: a court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point." *Id.* (citation omitted).

*Best v. Nationstar Mortg. LLC (In re Best),* 540 B.R. 1, 7–8 (1st Cir. BAP 2015).

Thus, we must determine whether the factual allegations in the complaint set forth a plausible claim that the debt is nondischargeable pursuant to § 523(a)(2)(B).

## B. Whether the Complaint Stated a Claim Under § 523(a)(2)(B).

In order to establish a debt is nondischargeable under § 523(a)(2)(B), a creditor must show that:

> (1) the debtor made a statement in writing; (2) the statement concerned the debtor's or an insider's financial condition; (3) the statement was materially false; (4) the creditor actually and reasonably relied on the false statement; and (5) the debtor made the false statement with the intent to deceive the creditor.

*Douglas v. Kosinski (In re Kosinski),* 424 B.R. 599, 608 (1st Cir. BAP 2010) (citing 11 U.S.C. § 523(a)(2)(B)). Failure to establish any one of these elements is fatal to a creditor's claim to relief. *Palmacci v. Umpierrez,* 121 F.3d 781, 787–88 (1st Cir. 1997) (citations omitted).

In pleading the first two elements, Privitera asserted "Curran made a statement in writing regarding his financial condition, namely, that he could offer two trucks as security for a loan." At the hearing before the bankruptcy court, Privitera's counsel confirmed the written statement for purposes of the statute was the List of Collateral attached to the Loan Agreement.

Privitera argues the writing qualified as a statement respecting Curran's financial condition under at least one interpretation of the statutory phrase and, therefore, she "plausibly pled" this element.

The Bankruptcy Code does not define the phrase "statement respecting the debtor's financial condition," and courts disagree "whether to interpret the phrase broadly to include any statement that has a bearing on the financial position of the debtor or an insider, or narrowly so as to include only statements providing information as to a debtor's net worth, overall financial health, or an equation of assets and liabilities." *In re Kosinski,* 424 B.R. at 608–609 (collecting cases within the First Circuit); *see also Cadwell v. Joelson (In re Joelson),* 427 F.3d 700, 713–14 (10th Cir.2005) (engaging in detailed analysis of different approaches). Although neither the First Circuit nor the Panel has expressly stated whether the phrase should be interpreted broadly or narrowly (or something in between),[8] the emerging trend within the District of Massachusetts favors a narrow interpretation of the phrase.[9]

When discussing the different approaches, the *Kosinski* panel stated as follows:

Although a statement of financial condition does not need to be a formal financing statement, it must, in some way, describe the financial condition of the debtor. *See [Middlesex Sav. Bank. v. Flaherty (In re Flaherty)],* 335 B.R. [481,] 489 [ (Bankr.D.Mass.2005) ] (noting that financial statement need not "be a formal document produced by commercial or banking institutions," but "[n]evertheless, it must describe the financial condition of the debtor"). The normal commercial meaning and usage of "statement" in connection with "financial condition" denote either a representation of an entity's overall net worth or an entity's overall ability to generate income. *See [Bal–Ross Grocers, Inc. v. Sansoucy (In re Sansoucy)],* 136 B.R. [20,] 23 [ (Bankr.D.N.H.1992) ]; *Jokay Co. v. Mercado (In re Mercado),* 144 B.R. 879, 883 (Bankr.C.D.Cal.1992); *see also In re Joelson,* 427 F.3d at 714 ("False statements [for purposes of § 523(a) ] are those that purport to present a picture of the debtor's overall financial health," including "those analogous to balance sheets, income statements, statements of changes in overall financial position, or income and debt statements that present the debtor or insider's net worth, overall financial health, or equation of assets and liabilities.... What is important is not the formality of the statement, but the information contained within it-information as to the debtor's or insider's overall net worth or overall income flow.").

8. In *Norcross v. Ransford (In re Ransford),* 202 B.R. 1, 4 (Bankr.D.Mass.1996), the bankruptcy court eschewed a category-based analysis in favor of examining the statement and the purpose for which it was sought and made. Privitera refers to this as the "purpose-based approach," but acknowledges that her asserted purpose for the List of Collateral (to provide the value of the property available as collateral) "may not be sufficient to qualify it as a statement concerning the debtor's financial condition."

9. *See, e.g., Associated Receivables Funding, Inc. v. O'Donnell (In re O'Donnell),* 523 B.R. 308, 319–20 (Bankr.D.Mass.2014); *Abramov v. Movshovich (In re Movshovich),* 521 B.R. 42, 57 (Bankr.D.Mass.2014); *USAlliance Fed. Credit Union v. Stinson (In re Stinson),* A.P. No. 09–1217, 2012 WL 359917, at *5 (Bankr. D.Mass. Feb. 2, 2012); *Danvers Sav. Bank v. Alexander (In re Alexander),* 427 B.R. 183, 194 (Bankr.D.Mass.2010).

■ 424 B.R. at 609–10.[10] Thus, whichever approach is applied, the statement must, at the very least, contain some description of the debtor's financial condition.

Privitera argues that under the broad approach, the List of Collateral clearly constituted a statement regarding Curran's financial condition, because it "falsely asserted that the collateral was unencumbered (or failed to disclose that the collateral was encumbered)." In support, she cites *Engler v. Van Steinburg (In re Van Steinburg),* 744 F.2d 1060, 1061 (4th Cir. 1984), in which the court held that a debtor's oral misrepresentation that certain property he owned was unencumbered at the time he pledged it as collateral for a loan was a statement regarding the debtor's financial condition. Privitera also asserts it is "not clear" whether the List of Collateral would be considered a statement concerning Curran's financial condition under the narrow approach. Nonetheless, she argues that at the motion to dismiss stage, it was only necessary for her to allege facts that support a plausible basis in law for relief, and the List of Collateral constituted a statement regarding Curran's financial condition under at least one interpretation of the phrase.

Curran argues, however, that because the List of Collateral was not a written financial statement and did not otherwise represent his financial condition, it did not constitute a statement concerning his financial condition under either interpretation of the phrase. As a result, Curran argues, Privitera did not sufficiently plead this element of § 523(a)(2)(B) in her complaint.

■ We agree. The list of personal property Curran provided included a description of the property and the "cost" of each item, which represented the item's purchase price. Privitera's attorney turned Curran's list into the List of Collateral. The List of Collateral also had a column titled "cost" (the term was undefined) but did not provide any type of valuation for the property, nor did it affirmatively represent he held title to each piece of property or the property was unencumbered. Clearly, the List of Collateral did not establish Curran's net worth, overall financial health, or ability to generate income, as required under the narrow approach. Nor did the List of Collateral contain an assertion he owned the property free and clear of other liens, as discussed in *Van Steinburg, supra* (holding debtor's false assertion that property he pledged as collateral was unencumbered was a statement regarding his financial condition). Thus, the List of Collateral, on its face, simply indicated the Debtor's ownership, possession, or control of property, and did not have any bearing on his financial position. *See, e.g., Bandi v. Becnel (In re Bandi),* 683 F.3d 671, 676 (5th Cir.2012) ("A representation that one owns ... property says nothing about the overall financial condition of the person making the representation or the ability to repay debt."); *In re Joelson,* 427 F.3d at 715 ("Ownership Representations do not qualify as 'respecting the debtor's ... financial condition.'") (citations omitted). As such, the List of Collateral did not constitute a statement concerning Curran's financial condition under either interpretation of the phrase and, therefore, Privitera did not sufficiently plead this element of § 523(a)(2)(B) in her complaint.

■ Moreover, even if we determined the List of Collateral could qualify as a statement regarding Curran's financial condition, Privitera's complaint still failed

---

10. The *Kosinski* panel declined to adopt a specific approach because "the result would [have been] the same regardless of the approach taken." 424 B.R. at 609.

to state a claim for relief under § 523(a)(2)(B) because she did not plead sufficient facts to demonstrate the List of Collateral was materially false.

 "A statement is materially false if it paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit. . . ." *Greene v. Shaw (In re Shaw)*, A.P. No. 11–1101–BAH, 2016 WL 1690706, 2016 Bankr.LEXIS 1823 (Bankr.D.N.H. Apr. 25, 2016) (citations omitted). Thus, "materiality is not assessed on the basis on the relative size of the error, but to the degree that it distorts the debtor's financial picture." *Id.* (citing *In re Movshovich*, 521 B.R. at 61).

In the complaint, Privitera alleged the List of Collateral was false because it: (1) misrepresented the amount of property available to secure the loan; (2) did not disclose the encumbrances or status of the title; and (3) revealed the properties' "costs" and not net equity. She did not allege, however, there was an understanding between the parties that Curran was going to pledge unencumbered collateral as security for the loan.[11] Nor did she allege there was a security agreement or a perfected security interest in any of the collateral that would support her claim that Curran pledged the collateral as security.[12] Moreover, Privitera did not allege in the complaint, nor did the Loan Agreement require, that the items on the List of Collateral be unencumbered.[13] As a result, the alleged facts do not establish that Curran's failure to disclose on the List of Collateral that the trucks were encumbered was a misrepresentation by omission.

Moreover, there is no allegation in the complaint that the "costs" set forth in the List of Collateral were not, in fact, what each item cost Curran to purchase, nor is there any indication the listed "cost" of the property was a representation of the "value" of the property or Curran's "equity" in the property. Although Privitera asserted the listed "cost" had "almost no relationship to his amount of equity in them," she did not set forth what Curran's equity was in the property or how the List of Collateral misrepresented those values. In addition, although Privitera asserted the List of Collateral was false because Curran did not, in fact, hold title to one of the trucks identified on the list, the List of Collateral did not contain any representation Curran had title to each of the items. Thus, even taking the facts alleged in the complaint as true, the List of Collateral was not materially false inasmuch as it merely purported to be what it was—a list of property belonging to Curran, either by title or physi-

---

11. Although Privitera's counsel asserted at the bankruptcy court hearing that Curran testified at his Bankruptcy Rule 2004 examination that he "knew that he was being asked to pledge collateral" and that the "understanding between the parties was that Mr. Curran was going to pledge certain collateral which was unencumbered as security for the loan," there are no such allegations in the complaint. Moreover, the bankruptcy court could not consider anything outside of the pleadings (such as a Bankruptcy Rule 2004 examination) in the context of a motion to dismiss.

12. Privitera acknowledged at the bankruptcy court hearing that, although she claimed to have filed a financing statement (ostensibly with respect to non-rolling collateral), the financing statement was not backed by a security agreement.

13. Privitera argues Article 4 of the Loan Agreement required that the assets be unencumbered. That section provided, however, that Curran could not further encumber the property after executing the Loan Agreement, and was not a requirement that the assets be unencumbered at the time the agreement was executed.

cal possession, and the purchase price of each piece of property.

As Privitera failed to plead sufficient facts demonstrating the List of Collateral was a materially false statement concerning Curran's financial condition, we need not consider the remaining elements under § 523(a)(2)(B) as the failure to sufficiently plead even one of the elements under the statute dooms the complaint. Thus, we conclude Privitera failed to state a plausible claim for relief under § 523(a)(2)(B), and the bankruptcy court did not err in dismissing the complaint.

## II. Whether the Bankruptcy Court Abused its Discretion in Denying the Motion to Amend.

### A. Leave to Amend

 Amendment of a complaint is governed by Rule 15(a), applicable to adversary proceedings pursuant to Bankruptcy Rule 7015. Rule 15(a) allows a party to amend its pleading once as a matter of course under certain circumstances not present here. In other circumstances, a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The bankruptcy court should freely give a party leave to amend the complaint "when justice so requires." See Fed. R. Civ. P. 15(a)(2). Leave to amend "should be granted unless the amendment would be futile or reward undue delay." Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir.2009) (citation omitted). A proposed amendment is futile if the complaint, as amended, still fails to state a claim upon which relief may be granted. See id.; Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996) (citations omitted). As noted above, the bankruptcy court has discretion to grant or deny a motion for leave to amend a complaint, and its exercise of discretion

will be left untouched if there is an "arguably adequate basis" for its decision. See Juárez, 708 F.3d at 276.

Here, the bankruptcy court determined the proposed amendment to the complaint would be futile as the factual allegations did not set forth a claim under § 523(a)(2)(A). We must determine whether there is an "arguably adequate basis" for the bankruptcy court's decision. See Juárez, 708 F.3d at 276 (citation omitted) (internal quotations omitted).

### B. Whether the Complaint Stated a Claim Under § 523(a)(2)(A).

Section 523(a)(2)(A) excepts from discharge debts obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). Statements regarding the debtor's financial condition are expressly excluded from § 523(a)(2)(A) and are only actionable under § 523(a)(2)(B). Thus, § 523(a)(2)(A) and (a)(2)(B) are mutually exclusive. Mitsubishi Motor Sales of Caribbean, Inc. v. Seda Ortiz, 418 B.R. 11, 18 (D.P.R.2009) (citation omitted).

An action under § 523(a)(2)(A) involves three distinct categories of misconduct—false pretenses, false representation, or actual fraud—albeit with elements that overlap. See Diamond v. Vickery (In re Vickery), 488 B.R. 680, 686-91 (10th Cir. BAP 2013); Lykins v. Thomas (In re Thomas), A.P. No. 11-1056 MER, 2013 WL 6840527, at *12 (Bankr.D.Colo. Dec. 27, 2013) (ruling failure to address two of three categories resulted in waiver); Schafer v. Rapp (In re Rapp), 375 B.R. 421, 433 (Bankr. S.D.Ohio 2007); see also Husky Int'l Elecs., Inc. v. Ritz, —— U.S. ——, 136 S.Ct. 1581, 1590, 194 L.Ed.2d 655 (2016) (resolving a case law split and determining "actual fraud" for purposes of § 523(a)(2)(A) applies to fraudulent con-

veyance schemes despite the absence of a false representation); *Sauer Inc. v. Lawson (In re Lawson)*, 791 F.3d 214, 220 (1st Cir.2015) (ruling actual fraud is not limited to fraud effected by misrepresentation) (citation omitted).

■■■ In order to establish a debt is nondischargeable under § 523(a)(2)(A) due to a false representation, the plaintiff must show that:

> (1) the debtor made a knowingly false representation or one made in reckless disregard of the truth; (2) the debtor intended to deceive; (3) the debtor intended to induce the creditor to rely upon the false statement; (4) the creditor actually relied upon the misrepresentation; (5) the creditor's reliance was justifiable; and (6) the reliance upon the false statement caused damage.

*In re Kosinski*, 424 B.R. at 615 (citing *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 (1st Cir.2001); *Palmacci*, 121 F.3d at 786).

■■■ The requirements for false pretenses "are largely the, same, except that requirement of a false representation is replaced by a requirement of a false pretense, which is an implied misrepresentation or a false impression created by conduct of the debtor." *Meads v. Ribeiro (In re Ribeiro)*, A.P. No. 11–1188, 2014 WL 2780027, at *9 (Bankr.D.Mass. June 19, 2014) (explaining failure to disclose something debtor was obligated to disclose can constitute a false pretense) (citations omitted); *see also Old Republic Nat'l Title Ins. Co. v. Levasseur (In re Levasseur)*, 737 F.3d 814, 818 (1st Cir.2013) (explaining a false pretense occurs " 'when the circumstances imply a particular set of facts, and one party knows the facts to be otherwise,'

and where the silent party 'may have a duty to correct what would otherwise be a false impression.' ") (citations omitted); *Birch Hollow, LLC v. Tardugno (In re Tardugno)*, 510 B.R. 12, 18 (Bankr. D.Mass.2014) (same).

■■■ Privitera proposed to amend the complaint to add a count under § 523(a)(2)(A) under essentially the same facts as those set forth in the original complaint. She titled this new count "False Pretenses, False Representation, or Actual Fraud," paralleling the language of the statute. Specifically, she alleged Curran made either a knowing false representation or one in reckless disregard of the truth by representing he "could and would offer trucks as security for a loan" even though he was aware they were already encumbered. At the hearing, Privitera offered the false representation was Curran's failure to disclose the encumbrance, either in writing or orally, and that he provided the "cost" of the equipment instead of the "true value."[14] She also alleged in her amended complaint that she "actually relied" on Curran's representations and her reliance was justifiable because she was a "private individual who had never worked for a bank and had no experience making business loans, she was in a romantic relationship with Curran and had no reason to disbelieve him, she had no knowledge of the prior loans ... and she was grieving her brother's death."

The bankruptcy court determined Privitera's characterization of a misrepresentation was unavailing as, although she claimed Curran failed to reveal an encumbrance, she did not allege in the complaint that he had an obligation to do so or that

---

14. During the bankruptcy court hearing (and for the first time), Privitera's counsel also stated Curran's actions constituted actual fraud and the record supported such a finding based upon *In re Lawson, supra.* In her appellate brief, she suggests Curran's failure to reveal the encumbrances was a misleading omission.

he stated otherwise. It also determined her reliance was not justifiable because even if Curran misrepresented the existence of encumbrances, she did not obtain a lien herself. The bankruptcy court concluded, therefore, that Privitera's failure to obtain a perfected security interest in the trucks doomed her causes of action under § 523(a) and it denied the request to amend. These rulings must remain untouched if there is an "arguably adequate basis" for the bankruptcy court's decision. *See Juárez*, 708 F.3d at 276.

Although the amended complaint is not a model of clarity with respect to which of the three categories of conduct in § 523(a)(2)(A) she relies upon, it is evident Privitera is either arguing that the List of Collateral is a false representation or a false pretense. As to the former, we conclude there was an adequate basis for the court to rule as it did. That is, Curran used the word "cost," and the numbers he. placed under that column are consistent with the common definition of the word (i.e. the purchase price).[15] Indeed, the list included in the Loan Agreement prepared by Privitera's attorney identified the numbers provided by Curran as "cost." That Privitera assumed the word meant what she wanted to see in that column (i.e. value or equity) does not make Curran's use of the word a false representation or a representation in reckless disregard for the truth.

From the amended complaint and Privitera's attorney's assertions at the hearing, however, it appears Privitera may also be alleging a false pretense. That is, she claims Curran knew she understood the List of Collateral to be a list of unencumbered assets which would be available to her in the event of default, and he had a duty to clarify his use of the word

"cost." For there to be a false pretense, however, Curran must have had a duty to correct what would otherwise be a false impression, and Privitera could not point to anything obligating Curran to disclose the assets were encumbered. *See In re Levasseur*, 737 F.3d at 818. Thus, the record shows an ·"arguably adequate basis" for the bankruptcy court's determination.

 As to Privitera's reliance, justifiable reliance is a less demanding standard than reasonable reliance, requiring only that the creditor not " 'blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.' " *Ojeda v. Goldberg*, 599 F.3d 712, 717 (7th Cir.2010) (quoting *Field v. Mans*, 516 U.S. 59, 71, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (internal quotations omitted)). Justifiable reliance is a subjective standard, not an objective one. *Id.* (citing *Field*, 516 U.S. at 71, 116 S.Ct. 437). What is justifiable thus depends on the qualities and characteristics of the particular plaintiff and the circumstances of the particular case. *Id.* (citing *Field*, 516 U.S. at 71–72, 116 S.Ct. 437). That said, a person "cannot recover if he blindly relie[d] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Field*, 516 U.S. at 71, 116 S.Ct. 437 (citation omitted) (internal quotation omitted). Again, the court ruled Privitera would not be able to establish her reliance was justifiable given that she never bothered to take any steps to obtain or perfect a security interest in Curran's assets.

The facts, as Privitera set forth in the proposed amended complaint, are that the

---

**15.** Black's Law Dictionary defines "cost" as "[t]he amount paid or charged for something; price or expenditure." *Black's Law Dictionary* 422 (10th ed.2014).

parties at the time of the loan were in a position of trust. Curran ran a business and was in debt. While Privitera makes much of the fact that she had no experience in lending money and was unfortunately grieving the loss of her brother she, unlike Curran, was represented by counsel. Her counsel drafted the List of Collateral based solely on the list Curran provided to her. The list Curran provided contained the heading "cost" over the list of numbers. Privitera's counsel repeated the word "cost" in the List of Collateral. Privitera and her counsel assumed the word meant something other than the common definition of the word, and Privitera never suggested they even made a cursory inquiry as to whether he too was using a definition other than the one commonly associated with cost (he has represented he did not). Privitera has never alleged she asked Curran what he meant by "cost." Neither in the complaint nor at the hearing did Privitera suggest her counsel ever took any steps to verify title or encumbrances, to draft a security agreement, or thereafter to perfect any interests other than to file a financing statement that did not relate back to a security agreement. Although Privitera claims she would not have extended the loan absent the availability of the trucks for security, she never offered why neither she nor her counsel took any steps to guaranty that she had anything more than an unsecured loan. Based upon the foregoing, the record shows an "arguably adequate basis" for the bankruptcy court's ruling that Privitera could not have justifiably relied on the List of Collateral for repayment of the loan, and the ruling must remain untouched.

Thus, we conclude the bankruptcy court did not abuse its discretion in denying the Motion to Amend.

## CONCLUSION

For the reasons set forth above, we conclude the bankruptcy court did not err in granting the Motion to Dismiss and it did not abuse its discretion in denying the Motion to Amend. As a result, we **AFFIRM** the bankruptcy court's orders.